## Case No. 13,232.

SPENCER v. The CHARLES AVERY.

[1 Bond, 117.] [1]

District Court, S. D. Ohio. April Term, 1857.

SALVAGE—NATURE OF SERVICE—DANGER TO LIFE—BY REQUEST—RECEIVING PAY FOR SERVICE—MEASURE OF COMPENSATION.

1. Where a steamboat, on the Ohio river, laden with flour, was sunk by floating ice within a few feet of the shore, and her cargo was saved, at the request of the master of the boat, by fifty of sixty persons on the bank of the river, such service entitles the parties to a decree for salvage.

2. It is a well-settled principle of the maritime law, that risk or danger of life is not a necessary element of a salvage service. Where such risk or danger is incurred in saving property from destruction, it will place the salvors in a high position of merit, and entitle them to a more liberal compensation for the service than would otherwise be accorded to them.

3. The controlling inquiry in salvage cases is, was the property in peril of being lost, and was it saved by the efforts of those claiming to be salvors.

4. The measure of compensation, in salvage cases, depends wholly on the circumstances attending the service. Where there has been great personal exposure and risk, and property has been rescued from inevitable destruction

---

[1] [Reported by Lewis H. Bond, Esq., and here reprinted by permission.]

by the intrepidity of the salvors, a liberal allowance will be made. One-half the value of the property saved has been allowed in such cases. There may be cases where the service is attended with so little difficulty and peril that it would entitle the parties to little more than a quantum meruit for work and labor.

5. It is not material whether the salvage service was rendered spontaneously or by request, or whether with or without a previous contract between the owner or his agent and the salvors.

6. Persons who aid in a salvage service, and receive pay therefor from the owners of the property saved, abandon their right as salvors.

[This was a libel for salvage by Elisha T. Spencer against the steamboat Charles Avery and cargo.]

Chapline & Caldwell, for libellants.
King & Anderson, for respondents.

OPINION OF THE COURT. This action was brought to recover compensation for an alleged salvage service rendered by the libellant and others in the rescue of the cargo of the steamboat Charles Avery. The material facts are, that for several weeks prior to the 6th of February last, the said steamboat, ladened principally with flour in barrels and wheat in sacks, had been ice-bound at Hockingport, a short distance above the mouth of Hocking river, within a few feet of the shore of the Ohio river. About nine o'clock in the morning of the 6th of February, the ice in the river began to move, and, in its descent, struck the starboard side of the steamboat with such force as to make an opening some forty feet in length, and two feet in width, through which the water entered rapidly and caused the boat almost instantly to sink and settle on the bottom of the river. There was at that place about two and a half feet of water, and the river was rapidly rising. A part of the flour was stowed in the hold of the boat, a part on the lower deck, aft the boilers, and some three hundred and fifty barrels on the guards. The wheat, with the other portion of the cargo, consisting of twenty-one barrels of dried ginseng, and a quantity of rags and feathers, was also on the lower deck. At the time of the disaster, the master of the boat and three of the crew were present; and a Mr. Williams, acting apparently by the authority of the master, proposed to the persons then on the bank of the river, to assist in taking out and saving the cargo. These persons, numbering between fifty and sixty, of whom Spencer, the libellant, was one, immediately engaged in the work, and were assiduously and laboriously engaged from about half after nine o'clock in the morning till between four and five o'clock in the afternoon, when they ceased working, having taken out and placed on the shore eight hundred and ninety barrels of the flour, four hundred and seventy-seven bushels of wheat, and the ginseng, rags, feathers, etc., which made up the residue of the cargo. Eighty-six barrels of the flour were left in the hold

of the boat, and were removed by other parties some days after the sinking of the boat.

It appears from the evidence that in the evening after the property had been rescued from the boat, Mr. Williams gave notice to those who had aided in the work, that he would pay them for their services; and thirty-three of the number applied for and received payment at a rate varying from $1.25 to $2 each. The other part of the company declined to receive pay, and they are, as the court is informed, claimants for salvage, although no one but the libellant Spencer, has commenced any proceeding to enforce this claim. The cargo was owned by several different persons, whose names are set out in the answer. They insist, by their counsel, that the service rendered by the libellant, and those acting with him, was not a salvage service for which they are entitled to compensation upon any principle of the maritime law. And this is the principal inquiry presented for the determination of the court.

It is very clear there was no apparent danger of the loss of life in the removal of the cargo. There was, indeed, a possibility that while the persons at work were engaged in removing the flour from the hold of the boat, it might have been torn to pieces by the pressure of the ice upon it; in which case they would have been in great danger. But as this result did not take place, there is no ground for assuming that there was any personal danger to the parties beyond the injury to health, which might result to those who worked in the water in the removal of the flour from the hold of the boat. It is, however, clear beyond all question, that a part, at least, of the cargo was in immediate and imminent danger of being irrecoverably lost. There is very little doubt, that if not removed, the flour upon the guards, and most probably all that was deposited on the deck, would have been carried away by the water. The river was rapidly rising when the boat sunk, and when labor was suspended in the evening, there was nearly four feet of water on the deck. It is equally certain that the injury to the cargo, from the action of the water, would have been somewhat in proportion to the length of time it was submerged. It would result that the damage was materially lessened by the promptness with which the property was removed from the boat.

Do these facts present a case which entitles the parties to a decree for salvage? It is a well-settled principle of the maritime law, that risk or danger of life is not a necessary element of a salvage service. It is true that where such risk or danger is incurred in saving property from destruction, it will place the salvors in a higher position of merit, and entitle them to a more liberal compensation for the service than would otherwise be accorded to them. But the controlling inquiry is, in salvage cases, was the property

in peril of being lost, and was it saved by the efforts of those claiming to be salvors? Salvage is defined to be, "the compensation allowed to other persons, by whose assistance a ship or its loading may be saved from impending peril, or recovered after actual loss." Abb. Shipp. (Ed. 1846) 659. In the case of Talbot v. Seaman [1 Cranch (5 U. S.) 1], 1 Cond. R. 229, the supreme court of the United States distinctly recognize this principle. The danger to the property must be real and imminent, and not merely speculative. In 1 Conk. Adm. 279, the doctrine is stated thus: "If the case be one demanding assistance, and it is effectually rendered in saving the vessel or cargo, or any part of either, from impending destruction or loss, a claim for salvage will be maintained." This doctrine was recognized by this court in the case of McGinnis v. The Pontiac [Case No. 8,801]. And it is also settled, that it is not material whether the salvage service was rendered spontaneously or by request, or whether with or without a previous contract between the owner or his agent and the salvors.

These principles, applied to the facts proved in this case, leave no reason for a doubt that the service rendered was a salvage service, for which compensation may be awarded by a court of admiralty. It is true the service rendered does not import the highest grade of merit. It lacks some of the elements necessary to give it this character. As before remarked, there was no apparent peril of life in the service; but it was promptly rendered, and laborious and exhausting while it continued, and effective in its results.

The measure of compensation in salvage cases depends wholly on the circumstances attending the service. Where there has been great personal exposure and risk, and it is certain that property has been rescued from inevitable destruction by the boldness and intrepidity of the salvors, a liberal allowance will be made. One-half of the property saved has been allowed in such cases. In others, a small per centum on the value has been deemed sufficient; and sometimes a sum in numero has been decreed. In Rowe v. The Brig [Case No. 12,093] that learned judge states the law on this subject as follows: "Cases may occur of such extraordinary peril and difficulty, of such exalted virtue and enterprise, that a moiety, even of a very valuable property, might be too small a proportion; and, on the other hand, there may be cases where the service is attended with so little difficulty and peril, that it would entitle the parties to little more than a quantum meruit for work and labor."

The value of the property rescued is also to be considered in estimating the amount of compensation for a salvage service. The evidence in the case before the court is not explicit as to this value. In his answer, the master of the steamboat states the entire cargo to have been worth about three thousand dollars. It would seem, however, from the evidence of the deputy marshal who made the seizure under the process of this court, and of witnesses who have testified as to the market value of the property, that the part rescued by the persons employed was not of less value than $6,500. Of this, the proportion saved from entire loss may be safely estimated at about $2,500. And it may be assumed from the evidence, that the increased damage to that part of the cargo not in immediate danger of being wholly lost, which would have resulted from its longer continuance in the water, would not be less than $1,000. On this basis, the actual benefit to the owners of the property, from the labors of those who aided in its rescue, amounted to $3,500. This result is obtained without reference to the chances of the loss of the entire freight of the boat, if it had not been promptly removed.

There is some difficulty in fixing the sum to be allowed as salvage in this case. It is clear the facts do not warrant a very high rate of compensation to the salvors, but it is equally clear that they are entitled to something beyond a mere quantum meruit allowance for their labor. As before noticed, thirty-three of those who aided in this service have abandoned their right as salvors by receiving pay from the owners. It is obvious that the proportion to which they would have been entitled, if they had not thus given up their right to salvage, can not be awarded to those having a right thus to claim. In settling a basis of a decree, the entire value of the salvage service is first to be ascertained, and from this is to be deducted the sum to which the persons paid would have been entitled, if they had not relinquished their claim as salvors. The balance will be the amount to be decreed as salvage. Upon the whole, it seems to the court that the equity of this case will be fully met by a decree for a gross sum of six hundred dollars to those who have not waived their rights as salvors by receiving payment for their services. A decree, finding this sum as the amount of salvage, and providing for its apportionment among the owners of the cargo, according to the interest of each, will therefore be entered. The distribution will be made in equal proportions to the libellant, and such other persons as within sixty days, by proper proceedings in this court, shall establish their right to a distributive share of said sum.